OPINION
Quentin Skipper appeals from his conviction in the Montgomery County Common Pleas Court of robbery after a jury trial. In a single assignment of error, Skipper contends his conviction was against the manifest weight of the evidence presented at his trial.
The robbery occurred in the late morning of July 31, 1997 as Roderick Sterling was dropping his son off at Teacher's Pet Day Care Center in Dayton after working the night before at the County Jail as a Corrections Officer. Sterling testified that as he waS getting out of his car, a 1991 Ford Mustang GT, he observed Gail Skipper, the defendant's spouse get out of a green car and accompany her daughter into the day care center. Sterling stated he opened his car door and put his car keys under the car mat. Sterling testified he saw the silhouette of someone seated in the driver's seat of the green car. He said he assumed the driver might have seen him place his car keys under the mat. Sterling said he followed Ms. Skipper into the day care center and he "signed in" his son. Sterling said a black male wearing a green paisley shirt, green shorts, and white tennis shoes walked in the center after him. He guessed his height at 5'6" or 5'7" tall. That person paid Vivian Morrison, the day care administrator, and then left.
Sterling testified that upon exiting the day care building, he heard the engine of his automobile start. He observed an individual sitting in the driver's seat with his legs extended from the vehicle, who was bent over and "messin [sic] with the stereo." As Sterling approached the vehicle the suspect pulled his legs into the vehicle and shut the door. As Sterling reached through the open window to grab the suspect, the suspect placed the vehicle into reverse, and looking backward over his shoulder and leaning away from Sterling, proceeded to back the vehicle down the day care driveway. Sterling jumped onto the hood of the vehicle as it backed up, holding on to the windshield. Upon reaching the end of the driveway, the suspect stopped the vehicle, placed it in "drive," and began moving forward — which caused Sterling to be thrown off of the vehicle. At trial, Sterling, who wears eyeglasses, testified that his glasses fell off during the struggle. The vehicle raced forward, crashing into another vehicle which was parked in the driveway, and which caused the air bag in Sterling's vehicle to deploy. The suspect then climbed out of the vehicle's window, feet first, and ran from the scene. He testified the suspect was wearing the green paisley shirt and white tennis shoes he had seen earlier on the man entering the day care center. Sterling testified he got a "good look" at the suspect as he was running up to his car and while he was lying on the hood of his automobile. (Tr. 34 and 35). At the hospital, Sterling realized the suspect was the person who had entered the day care center after him. He then had the police drive him to the day care so he could obtain the name of his suspect. He later identified the defendant from a series of photographs shown to him by the police.
At the time of the incident, Sterling was a Montgomery County Deputy Sheriff, working at the Montgomery County Jail in downtown Dayton. (Tr. at pp. 18-19). Sterling worked from approximately 12:00 a.m. until 8:00 a.m. on the night before the incident. (Tr. 19, 64-65). He stated to William Morrison, on the day of the incident, that he was tired, and needed to go home to get some sleep. (Tr. 28, 65). Following the incident, and owing to the injuries Sterling received when he fell off of the vehicle, Sterling was assigned to "light duty" and worked at the "booking counter" in the Montgomery County Jail. (Tr. 42-43).
Ms. Edith Hamilton was the owner of the day care, and operated it with the assistance of her son and his wife, William and Vivian Morrison. As the attempted theft of Sterling's vehicle was unfolding, Edith Hamilton stood near the front door, and kept her daughter-in-law, Vivian Morrison, from opening the door to watch what was happening. (Tr., at pp. 149-151). William Morrison was seated at his desk in the day care office, watching the incident unfold on a closed-circuit television which had been installed for security. (Tr., at 195-196). None of these individuals ever saw the suspect's face. However, each of the owner/operators, as well as Sterling, described the suspect as wearing a green, paisley shirt, dark shorts, and tennis shoes.
William Morrison promptly telephoned the Dayton Police, who arrived in a matter of minutes. (Tr., at p. 38). Morrison stated that Sterling gave the police a general description of the suspect, and was then transported to a hospital by ambulance.
Morrison stated that Sterling returned later and inquired of the owner/operators as to the suspect's identity. Sterling then indicated his belief to the police that defendant-appellant had been the individual who attempted to steal his automobile. Vivian Morrison testified that the defendant was wearing a green paisley shirt and dark shorts on the day of the robbery. Edith Hamilton agreed with Ms. Morrison's testimony. Bill Morrison, the other person present at the day care center that day who watched the struggle between Sterling and the thief on the security monitor, also agreed that defendant was wearing a green paisley shirt, shorts, and running shoes and that the thief looked like defendant. Morrison believed that defendant was the thief because of the thief's size, build, weight, timing, and behavior. (Tr. 249).
Vivian Morrison testified that the Skippers had been using the day care center for approximately 15 months prior to the incident. She identified a copy of the receipt she gave the defendant for his $80 payment on the day of the incident.
Ms. Morrison testified that the Skippers never returned to the day care center after the incident and left their child's asthma treating machine at the day care center. (Tr. 136).
Edith Hamilton testified that Mrs. Skipper inquired whether there was a videotape of the incident but she told her she couldn't discuss the matter with her. She did tell the court there was no tape recording of the incident. (Tr. 157, 158). She said she could remember what the suspect was wearing because she has a two-piece outfit similar to the shirt worn by the defendant. (Tr. 162 and 163).
The defendant was arrested on August 6, 1997. Tr. 446. He was interviewed by Detective Raymond Martin the next day and first said that he was not at the day care center during the incident. When Martin informed him that there were eyewitnesses that placed him at the scene, defendant continued to deny that either he or his wife had been there. Defendant then changed his mind and admitted that they were at the day care center, but only to drop off Nailah and pay the bill. When Detective Martin told him that the incident involved an attempted car theft Defendant replied "Yeah, I saw that guy, uh . . . coming in to the day care as I was leaving." (Tr. 450). When Detective Martin asked defendant how he knew which guy he was talking about, defendant did not reply.
The defendant took the witness stand and denied committing the robbery. He admitted being at the day care center on the date in question. He said he was wearing a black print design shirt with blue jeans that day however. He testified he was shocked when he was arrested a week after the crime. He said when he was "booked" in the County Jail, Mr. Sterling was present and saw him but didn't acknowledge him in any way. (Tr. 312).
Melinda Colquiltt, a Program Assistant at the Veteran's Hospital, testified she saw the defendant in the late morning hours on the date of the robbery and he was wearing black pants and a black shirt with prints on it. (Tr. 377). On cross-examination, she admitted the shirt could have been a paisley shirt. (Tr. 382).
Destiny Skipper, age 9, testified she was with her father on the date in question and he did not try to steal anyone's car. She also said he was wearing a black printed shirt and long pants. (Tr. 415).
Gail Skipper testified she worked as a Loss Prevention Officer for Wal-Mart stores. Ms. Skipper corroborated her husband's testimony that he left the day care center with her without incident and he was wearing the clothes he described in his testimony.
"Weight of the evidence concerns `the inclination of the greater amountof credible evidence, offered in a trial, to support one side of the issue rather than the other.'" State v. Thompkins (1997), 78 Ohio St.3d 380,387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. On appeal, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. We give substantial deference to the trial court's determinations of witness credibility because the "decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported.
We cannot say upon a careful review of the entire record that the jury clearly lost its way in convicting the defendant. The assignment of error is overruled and the judgment of the trial court is Affirmed.
GRADY, P.J., and FAIN, J., concur.
Copies mailed to:
Cheryl A. Ross
Karen Denise Bradley
Hon. Barbara P. Gorman